Marshall HAMILTON, Jr., Marshall
Hamilton and Robin Hamilton,
Appellants,

v.

UNIONVILLE–CHADDS FORD
SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1997.

Decided April 25, 1997.

Alan J. Jarvis, Coatesville, for appellants.

Timothy F. Rayne, West Chester, for appellee.

Before COLINS, President Judge,
DOYLE, J., (P.), and LORD, Senior Judge.

COLINS, President Judge.

Marshall Hamilton, Jr. and his parents, Marshall Hamilton and Robin Hamilton (Appellants), appeal the order of the Court of Common Pleas of Chester County (Common Pleas Court) that affirmed the decision of the Board of School Directors (Board) of the Unionville–Chadds Ford School District (District) to "permanently expel" Marshall Hamilton, Jr. (Hamilton) "as a student." Board's Decision, November 20, 1995. We reverse and remand.[1]

Hamilton was expelled as a thirteen-year-old, eighth-grade student of the District's Charles S. Patton Middle School (Patton) for committing two serious District and Patton violations in a relatively short period of time. The first incident occurred in March or April 1995, when Hamilton sold a Sony Discman that had been stolen from another student's locker for the benefit of the thief, with the knowledge that it had been stolen. For this incident, Hamilton was suspended for ten days and placed on "probation." The second incident occurred on June 6, 1995, shortly after his return from the suspension, when Hamilton was caught with two or three marijuana cigarettes in his possession, together with regular cigarettes, a lighter, and lighter fluid.

The District Superintendent recommended that Hamilton be expelled because of his repeated "level F" suspensions. Level F is the most serious type of infraction under the Patton Discipline Code (Patton Code) and includes the two infractions committed by Hamilton. A hearing was held

1. We note that at oral argument, counsel for both parties stated that Hamilton had applied for readmission and was readmitted to school. Hamilton's readmission, however, is not a matter of record; and this Court has filed this opinion based upon the record submitted before it. If this matter has become moot, the Common Pleas Court may enter an appropriate order.

before the Disciplinary Committee of the Board in November 1995. The Committee issued an adjudication recommending the permanent expulsion of Hamilton because of his two infractions. The Board adopted this recommendation on November 20, 1995. The Common Pleas Court affirmed, and this appeal followed.[2]

Appellants raise two issues. First, they argue that the Board erred when it expelled Hamilton rather than impose a ten-day suspension, which suspension is the punishment set forth in the Patton Code for level F infractions. Second, they argue, in the alternative, that conflicts between the Patton Code and the District-wide disciplinary policy (entitled "Student Rights and Responsibilities" and hereinafter referred to as the District Policy), which the Board relied upon, at least in part, to expel Hamilton, render them "void for vagueness" under the Due Process Clause of the United States Constitution.

To impose the punishment of expulsion, the Board was compelled to apply both the Patton Code and the District Policy to Hamilton's case; the Patton Code on its own does not clearly allow for expulsion for Hamilton's infractions. Competent testimony at the hearing established that the District Policy is meant to apply to all students in the District (including Patton students) and that the Patton Code applies only to Patton students.

The Patton Code lists a series of infractions from level A to level F, F being the most serious. One may obtain the next level of infraction by repeated and/or severe offenses classified in the levels below. For example, it is a level F infraction to commit "[r]epeated and/or severe Level A, B, C, D, or E offenses." Patton Code, p. 3. The Patton Code, however, does not address repeated and/or severe level F infractions.

For each level there is an assigned punishment. For level F infractions, students "will receive temporary suspension 10 days out of school." *Id.* Although the Patton Code defines "Expulsion" (which definition includes

permanent expulsion[3]), no offense is listed as warranting this punishment. Similarly, the Patton Code refers to, though does not specifically define, "Probation," but does not indicate what punishment applies to a violation of probation.

The Board found that Hamilton's expulsion was permitted under the District Policy read in conjunction with the Patton Code. This is because the District Policy also provides for punishment for the two infractions committed by Hamilton. The punishment called for under the District Policy is "exclusion," which is defined as either a suspension of one-to-ten days or an expulsion of more than ten days, up to and including permanent expulsion. Because the Patton Code defines expulsion but does not set forth the offenses that warrant expulsion, the Board determined that the District Policy must be consulted to determine what those offenses are, particularly when the Patton Code also does not address repeated level F offenses. Either of Hamilton's infractions could result in exclusion under the District Policy. The Board therefore determined that Hamilton's repeated level F offenses permit a permanent expulsion under the District Policy.

Under Section 1318 of the Pennsylvania School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 13–1318, a school board has broad discretion to expel a student under circumstances deemed sufficient by the board, following a proper hearing. *See Giles ex rel. Giles v. Brookville Area School District,* 669 A.2d 1079 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 544 Pa. 686, 679 A.2d 231 (1996). Further, Section 510 of the School Code, 24 P.S. § 5–510, provides that a school board "may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper ... regarding the conduct ... of all pupils...." Notwithstanding, a school board may not act in a manner that is arbitrary or capricious. *Giles.*

---

**2.** This Court's scope of review in these matters is limited to a determination of whether the Board's adjudication violated the constitutional rights of Appellants or is not in accordance with law, or if any necessary finding of fact support-

ing the adjudication is not supported by substantial evidence. 2 Pa.C.S. § 754(b).

**3.** Patton Code, p. 2.

Both the Patton Code and the District Policy were within the discretion of the Board to adopt. The difficulty is that the two policies read together conflict. The District Policy gives broad discretion for the Board to exclude a student from one day to a permanent expulsion for certain infractions. The Patton Code sets limits on the punishment for the same infractions. Thus, under the District Policy, only one of Hamilton's infractions could have resulted in expulsion, yet the Patton Code would limit the punishment to a ten-day suspension.

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that the effect may be given to both. If the conflict between the two provisions is irreconcilable, the special shall prevail and shall be construed as an exception to the general provision....

1 Pa.C.S. § 1933.[4]

■ In this case, the Patton Code is specific to Patton students. As characterized by the District Superintendent at the hearing, the Patton Code is the interpretation of the District Policy at the Patton level. *See* N.T. p. 38. The Patton Code could have set forth infractions that could lead to expulsion; it did not. A Patton student is on notice only that a level F infraction will result in a ten-day suspension. It is therefore fundamentally unfair to convolve through the two policies to expel a student for an infraction that calls

for only a ten-day suspension. We understand the Board's argument that it was attempting to read the two policies together, to give effect to words defined in the Patton Code but not implemented, such as "expulsion." We believe, however, that this reading is too subtle in the face of the clearly articulated policy that establishes specific penalties for specific offenses. We therefore find the Board's interpretation of the two applicable policies to be an error of law.

In coming to this result, we are not stating that expulsion is too harsh a penalty in this case or that as a general principle a school board lacks the discretion to expel a student where it believes the circumstances warrant that penalty. Where, however, a code of regulations limits the penalty that may be imposed, a school board may not embark on a convoluted journey through two sets of policies, as it did in this case, to find the result it would prefer to have.

Accordingly, the order of the Common Pleas Court is reversed, and this matter is remanded to said court to instruct the Board to impose a penalty consistent with the limits set forth in the Patton Code.[5]

DOYLE, J., dissents.

---

4. Although the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, applies specifically to the construction of state statutes, its principles are also helpful in interpreting local laws. *See Francis v. Corleto*, 418 Pa. 417, 211 A.2d 503 (1965).

5. Because of our holding that the Board committed an error of law in its interpretation of the

Patton Code, we need not address Appellants' vagueness argument.